## June Kipp v. Ervin W. Chips Estate

[732 A.2d 127]

No. 97-279

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed February 26, 1999

*Lance C. Shader*, Brattleboro, for Plaintiff-Appellant.

*Richard M. Gale* of *Gale & Corum*, Brattleboro, for Defendant-Appellee.

**Dooley, J.** This dispute over the language in a deed requires us to decide whether the co-owners of a parcel of land in Newfane held the property as joint tenants with a right of survivorship so that the death

of a co-owner extinguished the interest of his heirs in the realty. Concluding that the deed created a tenancy in common, the superior court awarded an undivided one-half interest to defendant, the estate of co-owner Ervin W. Chips. Plaintiff and co-owner June Kipp appeals, contending that the deed provides for a joint tenancy or, alternatively, that the deed is ambiguous such that the court should have admitted parol evidence to resolve the ambiguity. We affirm.

The following facts, as found by the Windham Superior Court, are not in dispute. On August 7, 1987, plaintiff acquired her interest in the property through a warranty deed conveying the land from Byllee Lloyd Gould to Ervin W. Chips and June Kipp. The granting clause of the deed provided that Gould was conveying the property to "Ervin W. Chips and June Kipp, joint tenants, and their heirs and assigns forever." The habendum clause,[1] however, described the grantees as "tenants in common, and their heirs and assigns."

Chips died on October 5, 1994. On January 21, 1997, plaintiff filed a complaint in the Windham Superior Court seeking a declaratory judgment that the deed created a joint tenancy and, therefore, that Chips' son and heir had no interest in the property upon his father's death. Relying solely on the language of the deed, and the argument and submissions of counsel, the Windham Superior Court entered judgment in favor of the estate. The court determined that the language of the deed fully expressed the intention of the grantor and, therefore, that the court did not have to look beyond the four corners of the instrument. The court then ruled that the habendum clause of the deed clarified the granting clause and created a tenancy in common.

Plaintiff's main argument is that the dispute should have been resolved based on the rule of deed construction that the wording of the granting clause controls over the wording of the habendum clause when there is a conflict between them. In plaintiff's view, the granting clause of the deed clearly conveys a joint tenancy, while the habendum clearly conveys a tenancy in common. Since the clauses are in conflict, plaintiff argues that the granting clause must control and the deed therefore conveys a joint tenancy. For four reasons, we do not find this argument persuasive in resolving this case.

---

[1] The habendum clause in a deed typically sets forth the estate to be held by the grantee. While the granting clause actively transfers the land from the grantor to the grantee, the habendum clause seeks to describe the type of title that has been granted. See, e.g., *In re Estate of Fleck*, 154 N.W.2d 865, 867 (Iowa 1967); see also *Johnson v. Barden*, 86 Vt. 19, 24, 83 A. 721, 723 (1912) (it is proper office of habendum to define quantity of estate granted).

■ First, in interpreting a deed, we look to the language of the written instrument because it is assumed to declare the intent of the parties. See *Okemo Mountain, Inc. v. Town of Ludlow*, 164 Vt. 447, 451, 671 A.2d 1263, 1267 (1995). Our "'master rule for the construction of deeds is that the intention of the parties, when ascertainable from the entire instrument, prevails over technical terms or their formal arrangement.'" *Kennedy, Adm'r v. Rutter, Adm'r*, 110 Vt. 332, 338, 6 A.2d 17, 20 (1939) (quoting *Vermont Kaolin Corp. v. Lyons*, 101 Vt. 367, 376, 143 A. 639, 642 (1928)). We read the entire written instrument as a whole, giving "effect to every part" so as to understand the words in the context of the full deed. *Aiken v. Clark*, 117 Vt. 391, 393, 92 A.2d 620, 621 (1952). In so doing, we construe the various clauses of the document, wherever possible, so that the deed has a consistent, or harmonious, meaning. See *deNeergaard v. Dillingham*, 123 Vt. 327, 332, 187 A.2d 494, 498 (1963).

As this Court observed in 1912:

> It seems to have been recognized from the first that the division of a deed into such parts as the premises, the habendum and the tenendum, was pretty much a matter of capitalization and punctuation, and our Court was never greatly impressed with the idea that it is of vital importance in what part of a deed the intention is expressed so long as it finds somewhere clear and adequate expression.

*Johnson v. Barden*, 86 Vt. 19, 25-26, 83 A. 721, 724 (1912).

■ The rule on which plaintiff relies is actually an aid to construction and not a positive rule of law. See *id.* at 25, 83 A. at 724; see also *Fairbrother v. Adams*, 135 Vt. 428, 429, 378 A.2d 102, 104 (1977). We also note that as an aid to construction it "has been increasingly discredited, and most modern cases either reject it entirely or give only a rather mild priority to the granting clause." R. Cunningham, W. Stoebuck & D. Whitman, The Law of Property § 11.1, at 719 (1984) (footnotes omitted). Although we agree that in some cases according priority to the granting clause over other deed language is appropriate, we stress that such priority is only an aid to determining the intent of the grantor, to be used along with other such aids.

■ Second, the rule plaintiff espouses must be assessed in light of the role of a habendum clause to modify, to limit or to explain the grant of the property interest set out in the granting clause. See

*Kennedy*, 110 Vt. at 339, 6 A.2d at 21. Thus, even in the face of a clear conflict between the language of the clauses, the language of the habendum may control as a modification, limitation or explanation of the language of the granting clause.

Third, the rule plaintiff espouses applies only if the granting clause is "'expressed in clear and unambiguous language.'" *Id.* (quoting *Bennett v. Bennett*, 93 Vt. 316, 318, 107 A. 304, 305 (1919)). As discussed below, we do not find the language of the granting clause to be clear and unambiguous in this case.

Fourth, the Legislature has made clear that an "[e]state in common" is "preferred to joint tenancy." 27 V.S.A. § 2. Although the statute does allow a deed to create a joint tenancy by explicit language, the legislative policy requires that we resolve ambiguity in favor of a tenancy in common rather than a joint tenancy. See, e.g., *Palmer v. Flint*, 161 A.2d 837, 842 (Me. 1960) (under similar Maine statute, intent to create joint tenancy "must be clear and convincing"); *Cross v. Cross*, 85 N.E.2d 325, 327 (Mass. 1949) (under similar Massachusetts statute, joint tenancy created only when it "plainly appears" from words used); *Gagnon v. Pronovost*, 71 A.2d 747, 751 (N.H. 1950) (affirming on rehearing that, under similar New Hampshire statute, grantor must clearly express intention to create joint tenancy).

The central issue in this case is whether the interests conveyed by the deed to June Kipp and Ervin Chips included a right of survivorship. A right of survivorship is normally the distinguishing feature of a joint tenancy. See *Methodist Church v. First Nat'l Bank*, 125 Vt. 124, 128, 211 A.2d 168, 171 (1965). The language of the granting clause was, however, internally inconsistent on exactly this point. Although it used the term "joint tenants," it went on to add "and their heirs and assigns forever." The additional language suggests that upon the death of one of the grantees, the grantor intended that the grantee's undivided one-half interest would pass to his or her heirs and assigns, rather than to the surviving co-grantee. The additional language is inconsistent with a right of survivorship.

Because the language of the granting clause alone is unclear, the habendum operates to explain the intent of the grantor. Here, the habendum is explicit that the interests conveyed were tenancies in common. Construing·all parts of the deed together, we hold that it conveyed a tenancy in common. This result is consistent with the legislative preference for tenancies in common over joint tenancies.

Plaintiff also argues that the court erred in refusing to admit extrinsic evidence to demonstrate the intent of the parties in drafting the deed. Plaintiff sought to call herself[2] and the lawyer who drafted the deed. The superior court rejected both witnesses, ruling that the deed was not ambiguous.

As a general rule, extrinsic evidence is not admissible to show the intent of the parties to a deed unless the language of the deed is ambiguous. We actually have two ambiguity rules. For both, the question of whether ambiguity exists is one of law. See *Isbrandtsen v. North Branch Corp.*, 150 Vt. 575, 577, 556 A.2d 81, 83 (1988). First, when looking at particular language in a deed, the court must accept the plain meaning of the language and not look to construction aids if the language is not ambiguous. See *Simpson Dev. Corp. v. Herrmann*, 155 Vt. 332, 334-35, 583 A.2d 90, 92 (1990). Second, if the court finds some ambiguity in particular language, it must examine the whole instrument, attempting to determine the intent of the drafters from all of the language and using relevant construction aids. See *Isbrandtsen*, 150 Vt. at 580-81, 556 A.2d at 85 (agreement must be viewed in its entirety; even if inartfully worded or clumsily arranged, writing is not ambiguous if it fairly admits of one interpretation). If the court then finds the writing is ambiguous, the proper interpretation becomes a question of fact, to be determined on all relevant evidence. See *Breslauer v. Fayston Sch. Dist.*, 163 Vt. 416, 425, 659 A.2d 1129, 1135 (1995). If the court does not find the writing ambiguous, it must declare the proper interpretation as a matter of law.

We allow limited extrinsic evidence of "circumstances surrounding the making of the agreement" in determining whether the writing is ambiguous. See *Isbrandtsen*, 150 Vt. at 579, 556 A.2d at 84. This evidence is relevant, however, only when, in combination with the writing, it supports an interpretation that is different from that reached on the basis of the writing alone, and both are reasonable. See *id.* It may not be used to vary the terms of an unambiguous writing. See *Tilley v. Green Mountain Power Corp.*, 156 Vt. 91, 93-94, 587 A.2d 412, 414 (1991).

---

[2]Defendant argued that plaintiff's evidence was also inadmissible under 12 V.S.A. § 1603 because that statute prohibits a party, in a case against the executor of an estate, from testifying in his or her favor with respect to a contract with a person who is not living or competent to testify. In view of our disposition, we do not reach this question.

Based on a vague offer of proof that suggested that the evidence would go to the true intent of the parties, the trial court ruled that the evidence was inadmissible. It found that the language of the deed was unambiguous such that extrinsic evidence would not be helpful. It was concerned that plaintiff was offering evidence to vary the terms of an unambiguous instrument, and plaintiff's offer of proof did not allay that concern.

As we held above, we do find internal inconsistency in the wording of the granting clause, but the meaning of that clause is fully explained by the habendum. We conclude that the writing as a whole is unambiguous, and the trial court acted within its discretion in refusing to admit the proffered evidence. See *In re Letourneau*, 168 Vt. 539, 554, 726 A.2d 31, 41 (1998) ("the trial court has broad discretion to exclude marginally relevant evidence that is remote, tends to confuse the issues or causes a waste of time"); *Doucette v. Doucette*, 168 Vt. 626, 628, 725 A.2d 901, 903 (1998) ("The trial court has broad discretion in determining the relevance of any evidence.").

There is an additional reason to refuse to admit the evidence in the circumstances of this case. Because of the Legislature's preference for tenancy in common, as expressed in 27 V.S.A. § 2, we can find a joint tenancy only if the intent to convey that property interest is expressed in clear and definite terms. We cannot find that the expression to create a joint tenancy is clear and definite in this case. Thus, we are left in the situation described by the New Hampshire Supreme Court in *Gagnon*:

> Consequently in the opinion of a majority of the Court the admission of evidence as to the facts and circumstances existing at the time of and surrounding the drawing of this deed, no matter how crystal clear it may be as to the grantor's intent to create a joint tenancy, would serve no useful purpose in this case, for it cannot alter the fact that he failed to express this intention in the deed in clear language as required by [statute]. If he had there would be no need for extraneous evidence to determine what kind of estate the deed creates.

71 A.2d at 751. Even if the extrinsic evidence was overwhelming that the parties to the deed in this case intended to create a joint tenancy, that intent was inadequately expressed to allow us to find such a

property interest. There can be no error in the refusal to admit evidence of that unavailing intent.

*Affirmed.*